OPINION
This is an appeal by defendant, Kevin McClelland, from a judgment of the Franklin County Municipal Court following a jury trial in which the jury returned verdicts finding defendant guilty of aggravated menacing and domestic violence.
On November 21, 2000, a criminal complaint was filed against defendant, charging him with one count of aggravated menacing in violation of R.C. 2903.21(A) and one count of domestic violence in violation of R.C. 2919.25(C). The matter came on for trial on May 9, 2001.[1]
The first witness called by plaintiff, State of Ohio, was Irene McClelland, the alleged victim. Ms. McClelland, age seventy, is the mother of the defendant. Ms. McClelland worked for the state for sixteen years in the area of mental health. She is currently a teacher at Sullivant Elementary School. Defendant, age thirty-four, has lived with his mother his entire life, with the exception of a brief period when he was in the United States Navy.
On November 21, 2000, Ms. McClelland awoke at approximately 7:30 a.m. and started to dress for work. Defendant pushed open her bedroom door and began to argue with her. Although the argument covered several topics, the primary subject was defendant's dissatisfaction with his mother's decision to replace her car that had been damaged in an automobile accident rather than buying him a new bicycle. Although Ms. McClelland reiterated her position that she had to replace her car, she did not say much more because she wanted to avoid a confrontation with her son. According to Ms. McClelland, "talking is very confronting with Kevin, touching him or anything" (Tr. 111), and "I can get hit. Things can get busted up and — he breaks my TV's and VCR's and anything in sight." (Tr. 110.)
Ms. McClelland gathered her clothing and proceeded toward the bathroom. Although defendant attempted to block her exit, she was eventually able to ease by him and leave the bedroom. Defendant followed her into the bathroom and stood in the doorway as she bathed and changed her clothes. The bathroom door was broken from previous kicks by defendant.
At some point during the argument, defendant told Ms. McClelland he was "going to kill [her]." (Tr. 112.) Although defendant had abused and threatened to kill her many times in the past, this particular threat scared her because defendant stated that she "would not know the time, the day or when or where he was going to do it." (Tr. 112.) Indeed, she thought he was going to kill her because "his demeanor was * * * different" than in the past. (Tr. 113.)She further testified that she believed the threat because defendant "has no care of what he does to people." (Tr. 121.)
After she finished getting dressed, Ms. McClelland pretended to leave for work so that she could avoid further contact with her son. She locked the door to the house behind her and walked to the detached garage. She sat on a garbage can in the garage for approximately forty-five minutes until it was time to leave for work. She did not call the police or anyone else because she felt she had to get to school. She did not tell anyone at school what had happened because she had been raised to keep family matters private and felt her situation was "a humiliating, shameful way to live." (Tr. 116.)
Ms. McClelland returned home from school at approximately 3:00 p.m. She assumed that defendant would be asleep, as he was unemployed and usually stayed up late into the night and slept during the day. Although defendant was asleep when she got there, he soon awoke and began "harassing" her. (Tr. 117.) She ignored him because she knew from past experience that if she talked back to him, it could be "dangerous." (Tr. 117.) She eventually contacted someone from Netcare, a mental health facility, who summoned the police to the house. She locked herself in the garage to avoid further confrontation with her son and waited for the police to arrive. She waited in the garage instead of the house because she thought of the garage as her "safe place" (Tr. 119), and she was afraid of what would happen if defendant saw the police coming. She knew from past experience that a visit from the police could make him angry.
Columbus Police Officers, James L. Jennings and Brian Newsome, were on duty on November 21, 2000, and were dispatched to Ms. McClelland's home. Upon arrival, the officers observed Ms. McClelland coming out of the garage. She recounted the day's events to the officers and told them defendant was in the basement. According to Officer Jennings, Ms. McClelland was undoubtedly in "great fear" (Tr. 145), as she could not speak clearly, was shaking, was hiding in the garage and refused to go anywhere near the house. Officer Newsome observed that Ms. McClelland "looked and sounded scared" (Tr. 159) and was "obviously frightened." (Tr. 154.)
After speaking with Ms. McClelland, the officers knocked on the back door of the house. Defendant and another man came to the door. After a brief conversation, defendant was placed under arrest. Defendant was neither belligerent nor confrontational during the encounter with the officers.
Defendant called two witnesses in addition to testifying on his own behalf. Patricia Williamsen, the Executive Director of Columbus Community Access ("Community 21"), a public access television station, testified that defendant was involved in a Community 21 studio production from 1:00 to 3:00 p.m. on November 21, 2000. Ms. Williamsen admitted that she was not present during the production and thus did not observe defendant's demeanor during the two hours he was at the studio; however, she averred that she had not been made aware of any problems with defendant's behavior during that period.
Stephen Woods, defendant's friend of fourteen years, testified that he called defendant the morning of November 21, 2000, and asked him to assist him in producing a show on Community 21 at 1:00 p.m. that afternoon. Defendant agreed, and Woods picked him up at his house at noon. According to Woods, defendant was jovial and in good spirits. After completing their studio work at 3:00 p.m., Woods and defendant returned to defendant's home. The two went directly to the basement and had no contact with Ms. McClelland. Shortly thereafter, they heard a knock at the back door. The police identified themselves and told defendant they wanted to speak to him. After a brief conversation, the police told defendant they were going to arrest him if he did not agree to go to Netcare. When defendant refused, he was placed under arrest.
Defendant testified that he was alone in the house when he awoke on November 21, 2000, and had no interaction with his mother prior to her leaving for work. His friend, Stephen Woods, called him and asked him to assist him in producing a program at 1:00 p.m. on Community 21. After the production, the two returned to defendant's home and went downstairs to defendant's bedroom. Defendant heard Ms. McClelland return home from school, but neither saw her nor talked to her prior to the time the police arrested him.
Defendant vehemently denied that he had a confrontation with his mother on November 21, 2000 and/or that he threatened to kill her. To the contrary, defendant testified that his mother had abused him emotionally and physically over his entire lifetime and had concocted the story in order to have him removed from the house.
Following presentation of the evidence, the jury returned verdicts finding defendant guilty of both charges in the complaint. The trial court sentenced defendant by entry filed May 11, 2001.
On appeal, defendant advances the following assignment of error:
 The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions and the convictions were not supported by the manifest weight of the evidence.
By his assignment of error, defendant challenges both the sufficiency and weight of the evidence supporting his convictions.
In State v. Martin (Apr. 19. 2001), Franklin App. No. 00AP-836, unreported, this court noted the separate standards of review to be utilized in sufficiency and weight of the evidence challenges:
 * * * In determining the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." * * * However, "[u]nlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented." * * * When reviewing the manifest weight of the evidence, an appellate court sits as a thirteenth juror; the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. * * * Further, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. * * *" [Citations omitted.]
As noted previously, defendant was convicted of aggravated menacing. R.C. 2903.21(A) defines the offense of aggravated menacing and states, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person * * *."
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. State v. Johnson (1978), 56 Ohio St.2d 35, 39.
Defendant contends that the state failed to present sufficient evidence on the charge of aggravated menacing. Initially, we note that defendant steadfastly denies threatening to kill his mother on November 21, 2000. However, defendant argues that even if such a threat had been made, the evidence is insufficient to establish aggravated menacing because he was not at the time in possession of a weapon or any other means to carry out the threat. It is well-established that the state does not need to prove the offender's ability to carry out a threat or any movement toward carrying it out. State v. Schwartz (1991), 77 Ohio App.3d 484, 486. Further, it is unlikely that defendant, a thirty-four-year-old male, would require any type of weapon to cause serious physical harm to a seventy-year-old female. Defendant could have carried out his threat to kill his mother by using his hands alone to strangle her or to beat her to death.
Defendant also contends that the state failed to establish that Ms. McClelland subjectively believed that defendant would cause her serious physical harm of the kind alleged. Subjective belief in the victim is necessary to establish the crime of aggravated menacing. Dayton v. Douglas (Jan. 23, 1987), Montgomery App. No. 9841, unreported. "* * * If the victim is not intimidated by the offender's threat or does not believe that he will carry such into execution, then the offender's conduct would, at most, constitute attempted menacing." Id., citing Dayton v. Waugh (Jan. 2, 1981), Montgomery App. No. 6965, unreported.
Again, we note that defendant denies threatening to kill his mother. However, even acknowledging Ms. McClelland's testimony regarding her belief that he would carry through with the threat to kill her, defendant argues that the actions taken by Ms. McClelland, after the threat was made, do not "corroborate her subjective fear." (Defendant-appellant's brief at 12.) More specifically, defendant points to evidence that Ms. McClelland did not call the police immediately after the alleged threat was made, told no one at school of the alleged threat, returned home unescorted knowing that defendant would be there, and ultimately called a mental health facility rather than the police.
Upon review of the record, we find that sufficient evidence was presented to establish each and every element of the offense of aggravated menacing. Ms. McClelland testified that on the morning of November 21, 2000, defendant threatened to kill her and that she would not know the time, the day or when or where he was going to do it. She was frightened by this particular threat and believed her son was going to kill her because both the nature of the threat and his demeanor were different than on other days he had threatened her. She pretended to leave for work early, but sat in the garage for forty-five minutes to avoid further confrontation with her son. Further, both of the police officers dispatched to the scene in the afternoon testified that Ms. McClelland exhibited signs of fear. Officer Jennings noted that she was frightened, shaking, unable to speak clearly, and was hiding in the garage and refused to go near her own home. Officer Newsome also testified that Ms. McClelland looked and sounded frightened.
Defendant's contention that Ms. McClelland's fear of being harmed was suspect is misplaced. Ms. McClelland explained that she did not call the police immediately after defendant made the threat because she wanted to avoid further contact with him until he had time to quiet down. She also stated that she felt she had to get to work because she needed to keep her job. Regarding her failure to tell any of her co-workers of the threat, she explained that she typically kept family matters to herself and was ashamed to tell others about her situation. As to her decision to return home after school, she explained that she felt it was safe to return home because defendant was usually asleep in the afternoon. Finally, Ms. McClelland explained that she called a mental health facility rather than the police because she was experienced in the area of mental health and needed professional help to contend with defendant's "psychotic behavior." (Tr. 116.) In short, we find the foregoing evidence more than sufficient to establish the crime of aggravated menacing.
Defendant was also convicted of domestic violence pursuant to R.C.2919.25(C), which provides, in pertinent part, that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." In contrast to aggravated menacing, the offense of domestic violence under R.C. 2919.25(C) contains the element of "imminen[ce]." "Imminent" is defined in State v. Collie (1996),108 Ohio App.3d 580, as "threatening to occur immediately." Id. at 583, quoting Webster's Second International Dictionary (1959), 1245.
Defendant contends that the state failed to establish that Ms. McClelland believed she was in "imminent" danger of physical harm. Specifically, defendant argues that "[defendant's] alleged threat appears to be veiled as a conditional threat" (defendant-appellant's brief at 15) and then relies on Collie for the proposition that conditional threats do not satisfy the imminence element of a charge under R.C. 2919.25(C). Defendant's reliance on Collie is misplaced, however, as defendant's threat to kill Ms. McClelland was not conditional.
A conditional threat is, by definition, a threat conditioned on a separate set of circumstances. (See Black's Law Dictionary defining "conditional" as: "Subject to or dependent on a condition * * *.") Black's Law Dictionary (7 Ed. 1999) 290. The defendant in Collie threatened the victim by stating: "If I had a gun, I would shoot you." Id. at 582. In contrast, defendant stated in no uncertain terms that he was going to kill Ms. McClelland and that she would not know the day, time or place he would carry through on that threat. As defendant's threat was not conditioned on any other event, Collie is inapposite.[2]
Moreover, we cannot agree that the evidence of record is insufficient to establish that Ms. McClelland believed that defendant would cause her imminent physical harm. As noted in State v. Taylor (1996),79 Ohio Misc.2d 82, 84, "* * * the critical inquiry is whether or not the proof fully evidences a reasonable belief by the victim that the accused will cause imminent physical harm." Here, Ms. McClelland's belief that defendant would cause imminent physical harm was substantiated by her testimony that his demeanor was different than on past occasions when he threatened her and that due to the extraordinary nature of the threat, she left the house, locked the door behind her, and waited forty-five minutes inside the garage before leaving for work. Such evidence establishes that Ms. McClelland believed that defendant could do at that moment what he said he intended to do. As such, the evidence of record clearly establishes the offense of domestic violence.
Turning to defendant's manifest weight challenge, we conclude that the jury did not lose its way in resolving credibility determinations, nor did the verdicts create a manifest miscarriage of justice. Here, the jury could have reasonably concluded that Ms. McClelland could have believed that her son would cause both imminent and serious physical harm. While defendant denies that he threatened his mother or even had a confrontation with her on the morning of November 21, 2000, and contends that his mother's subjective fears were unfounded, the trier of fact was in the best position to determine the credibility of the testimony presented, and we decline to substitute our judgment for that of the jury.
Based upon the foregoing, defendant's single assignment of error is overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed. We note, however, that the trial court's sentencing entry indicates that defendant entered a plea of guilty to the charges of aggravated menacing and domestic violence. As stated previously, defendant was found guilty by a jury. Accordingly, the cause is remanded to the trial court for its entry of an order nunc pro tunc correcting the error in its May 11, 2001 sentencing entry.
Judgment affirmed and cause remanded with instructions.
BRYANT, J., and TYACK, P.J., concur.
[1] The transcript of proceedings is erroneously dated May 9, 2000.
[2] Moreover, we do not subscribe to defendant's broad assertion that Collie stands for the proposition that conditional threats are never actionable under R.C. 2919.25(C). To the contrary, the Collie court opined that the conditional threat made by the defendant, i.e., "If I had a gun, I would shoot you," might have been actionable had there been admissible evidence of the victim's belief that harm was imminent. See State v. Taylor (1996), 79 Ohio Misc.2d 82, 86, fn. 4.